UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
JARON STEPHENSON, on behalf of himself and                    Case No.
 all others similarly situated,

      Plaintiff,                 **CLASS ACTION
                                                              COMPLAINT
                                                              & DEMAND FOR JURY
    v.                                    TRIAL**

ABBVIE, INC.,

      Defendant.
----------------------------------------------------------------


Plaintiff, **JARON STEPHENSON** ("Plaintiff" or "Mr. Stephenson"), on behalf of himself and

all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel,

JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant,

ABBVIE INC. or "Defendant"), hereby alleges as follows:

## **INTRODUCTION**

  1. Plaintiff Jaron Stephenson is a legally blind individual living with Cone Rod

Dystrophy, a progressive retinal condition that impairs both central and peripheral vision. He also

lives with Type 1 Diabetes, a chronic autoimmune disease he has managed since 2012. Mr.

Stephenson requires screen-reading software to navigate digital content and relies on accessible

websites to manage his health. These intersecting conditions demand ongoing medical oversight,

access to pharmaceutical information, and the ability to communicate with healthcare providers

and manufacturers about treatment options, side effects, and support programs. *(See Ex. A –*

*JARON STEPHENSON, Legally Blind Diagnosis, dated 2/25/2018.)*

  2. Plaintiff, JARON STEPHENSON, brings this action against Defendant, ABBVIE

1

INC., for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. AbbVie is a publicly traded biopharmaceutical company headquartered in North Chicago, Illinois, with a global footprint spanning over 175 countries and a product portfolio that treats more than 60 million patients annually. Its website, www.abbvie.com,  serves as a centralized digital gateway for patient support, product information, investor relations, and corporate communications. Despite its scale and stated commitment to patient-centered care, Defendant has failed to ensure that its website is accessible to blind and visually impaired individuals, including Plaintiff.

3.    AbbVie Inc. is a global biopharmaceutical company whose therapeutic portfolio includes medications directly relevant to Stephenson's medical profile. AbbVie manufactures and markets Humira®, Rinvoq®, and Skyrizi®, which are widely prescribed for autoimmune conditions such as rheumatoid arthritis, Crohn's disease, and ulcerative colitis. The company also maintains an active research pipeline in ophthalmology, including treatments for retinal diseases and vision preservation—areas that intersect with the progression and treatment landscape of Cone Rod Dystrophy.

4.    AbbVie's website serves as a primary digital gateway for patients seeking information about its medications, clinical trials, and patient assistance programs. For individuals like Stephenson, who rely on screen-reading technology and accessible design to navigate online platforms, the website should provide clear, labeled pathways for communication and support. However, when Stephenson attempted to use AbbVie's website, he was unable to locate any section or page that allowed him to contact the company via phone or text in a format compatible with his assistive technology. The site lacked accessible navigation, alternative communication formats, and compliance with basic digital inclusion standards.

5.       This failure denied Stephenson equal access to critical healthcare information and support services. For a blind individual managing two serious medical conditions, the inability to independently engage with a pharmaceutical provider's digital platform is not merely inconvenient—it is discriminatory. AbbVie's exclusionary design violates the Americans with Disabilities Act and reflects a broader disregard for the needs of blind and visually impaired patients.

6.       Plaintiff relies exclusively on screen-reading software to interact with websites and digital platforms. He attempted to access Defendant's website on multiple occasions to locate patient support resources, review AbbVie's treatment pipeline, and explore eligibility for assistance programs related to his care. However, he was repeatedly denied meaningful access due to widespread accessibility barriers. These barriers include unlabeled buttons, missing alternative text, inaccessible modal dialogs, and non-descriptive link text—all of which violate the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, the prevailing industry standard for digital accessibility. Plaintiff remains eager to return to the site once it is remediated, as AbbVie represents his best option for accessing relevant therapeutic resources and patient support.

7.       Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired individuals. Defendant's denial of full and equal access to www.abbvie.com—and thus its denial of the goods and services offered therein— constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

8.       Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind. According to a 2016

report published by the National Federation of the Blind, approximately 418,500 visually impaired persons reside in the State of New York.

9.      Congress has issued a clear and national mandate to eliminate discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity—barriers that are perpetuated by websites and other public accommodations that remain inaccessible to blind and visually impaired individuals. Likewise, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10.      Defendant's website is not equally accessible to blind and visually impaired consumers and therefore violates the ADA. Plaintiff now seeks a permanent injunction compelling Defendant to revise its corporate policies, practices, and procedures to ensure that its website becomes—and remains—accessible to blind and visually-impaired consumers.

## **JURISDICTION AND VENUE**

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims arising under federal law, including Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).

12.      This Court also has supplemental jurisdiction over Plaintiff's claims arising under the New York State Human Rights Law (Executive Law § 296) and the New York City Human Rights Law (NYC Admin. Code § 8-107), pursuant to 28 U.S.C. § 1367(a), as these claims form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District via the Internet, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website, www.abbvie.com, within his home in Bronx County, New York, located within this Judicial District.

## NATURE OF ACTION

14.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

15.     In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

16.     Blind and visually-impaired users of Windows-enabled computers have access to several screen-reading programs. Some are commercially licensed, while others—such as Nonvisual Desktop Access ("NVDA"), which Plaintiff uses daily—are freely available. NVDA enables blind users to navigate digital platforms independently, provided those platforms are

properly coded for accessibility.

17.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

18.    Screen readers operate based on sophisticated rules that interpret digital content gathered from the operating system, browser, and application layers. They convert this information into speech, Braille, or other accessible formats. When websites fail to meet accessibility standards, these tools cannot bridge the gap.

19.    The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

20.    Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

      a.    A text equivalent for every non-text element is not provided;

      b.    Title frames with text are not provided for identification and navigation;

      c.    Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDF); and

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not

available to user agents, including assistive technology.

21.     Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

22.     Plaintiff, JARON STEPHENSON is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For  Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as "NVDA for Windows."

23.     Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.

The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link, says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on September 8, 2025; estimating 26.0 million adult Americans reported sight deficiency).

24.     AbbVie Inc. is a Delaware corporation headquartered in North Chicago, Illinois. It is a publicly traded biopharmaceutical company listed on the New York Stock Exchange under the ticker symbol "ABBV." AbbVie operates a global business focused on immunology, neuroscience, oncology, and aesthetics, and maintains a centralized digital infrastructure through its website, www.abbvie.com. . This site serves as a primary portal for patient support, product information, investor relations, and corporate communications.

25.     Defendant relies heavily on its website to deliver patient resources, publish clinical pipeline updates, distribute investor materials, and facilitate public engagement. The site is functionally integrated with AbbVie's backend systems, including medical information portals, stakeholder communications, and compliance disclosures. It is not merely informational—it is a commercial and operational gateway for millions of users worldwide.

26.     AbbVie treats over 60 million patients annually across 175+ countries and employs more than 55,000 individuals in over 70 jurisdictions. Its quarterly revenue exceeds $15.4 billion, with full-year projections surpassing $60 billion. Despite its commercial scale and global reach,

Defendant has failed to implement basic accessibility protocols on its website, excluding blind and visually-impaired users from meaningful participation.

27.    Despite this widespread visibility and the publication of federal guidance concerning the mandatory nature of digital accessibility under the ADA, Defendant's website remains riddled with access barriers—including unlabeled buttons, missing alternative text, inaccessible modal dialogs, and non-descriptive link text. These barriers prevent screen reader users from navigating the site, accessing patient support tools, and engaging with AbbVie's public-facing services.

**Barriers Encountered While Accessing AbbVie's Website**

28.    On August 12th, 2025, and August 15th, 2025, Plaintiff Jaron Stephenson, who is blind and relies on screen reader technology, visited the official website of AbbVie Inc. (www.abbvie.com) to locate patient support resources and review information about AbbVie's treatment pipeline. Plaintiff intended to explore therapeutic options for himself who had been recently prescribed an AbbVie medication and to evaluate eligibility for patient assistance programs. For instance, Plaintiff sought to access the following sections:

   *   The "Patient Support" portal for medication guidance;

   *   The "Pipeline" section for upcoming treatments;

   *   The "Investor Relations" page for corporate transparency;

   *   The "Who We Are" section to understand AbbVie's mission and leadership.

29.    Upon visiting AbbVie's website, Stephenson encountered multiple accessibility barriers that rendered key functions unusable. These included unlabeled form fields, inaccessible

navigation menus, missing alternative text for images, and dynamic content incompatible with screen reader technology. These barriers obstructed his ability to access treatment updates, enrollment tools, and patient support resources—services that AbbVie offers to the general public but denies blind users through its inaccessible design.

30.    The barriers Stephenson encountered were not isolated or trivial. They created a concrete and particularized injury by denying him equal access to health-related services and information. Without remediation, these barriers will persist, deterring Stephenson from revisiting the site and depriving him of the ability to engage with AbbVie's offerings on equal terms. The deterrent effect is ongoing and directly tied to AbbVie's failure to implement accessible design standards.

31.    Stephenson's experience is not merely technical—it is personal. The inaccessibility of AbbVie's website compounds the isolation and uncertainty faced by individuals navigating rare degenerative conditions. Equal access is not a convenience; it is a necessity. AbbVie's failure to provide accessible digital services undermines the dignity and autonomy of blind users, reinforcing systemic barriers that the ADA was enacted to dismantle.

32.    AbbVie's website fails to conform to the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, the prevailing technical standard for digital accessibility. These violations constitute unlawful discrimination under Title III of the Americans with Disabilities Act, as they exclude blind individuals from full and equal enjoyment of AbbVie's goods, services, and privileges. Stephenson's injury is both technical and legal, arising from AbbVie's failure to provide an accessible digital interface.

33.    These barriers denied Plaintiff equal access to Defendant's digital platform,

preventing him from evaluating treatment options, accessing patient support tools, and understanding AbbVie's corporate mission. Plaintiff was unable to determine whether the selected resources matched his family's medical needs, were financially accessible, or were available for enrollment.

34.     These barriers denied Stephenson equal access to AbbVie's consumer-facing website and prevented him from completing a basic health-related task. The site's design prioritized visual engagement over structural accessibility, violating WCAG 2.1 Level AA standards and the mandates of Title III of the Americans with Disabilities Act.

35.     AbbVie's failure to implement standard accessibility features—such as semantic markup, ARIA roles, and keyboard operability—constitutes a pattern of digital exclusion. Despite offering life-saving medications and global patient support, the company's website remains incompatible with screen reader technology and inaccessible to blind users.

36.     Defendant's website, www.abbvie.com, is a digital extension of its global biopharmaceutical operations, offering product information, patient enrollment tools, investor disclosures, and corporate communications. As such, it constitutes a place of public accommodation under Title III of the ADA and must comply with the Web Content Accessibility Guidelines (WCAG) to ensure equal access for individuals with disabilities.

37.     Stephenson intends to return to AbbVie's website for several reasons. First, his family relies on him to coordinate treatment research for himself and patient support enrollment. Second, AbbVie is the exclusive source for certain medication-specific resources, clinical pipeline updates, and investor materials. Third, the website frequently publishes time-sensitive content—including earnings releases, product launches, and patient support updates—not available through

third-party platforms. These incentives create a foreseeable and functional need for Stephenson to revisit the site.

38.     Stephenson's intent to return is specific, foreseeable, and functionally necessary. As a blind individual living with Cone-Rod Dystrophy, he relies on AbbVie's website to monitor treatment developments, access patient support resources, and evaluate eligibility for assistance programs. AbbVie's therapeutic portfolio—including its neuroscience and ophthalmology pipelines—aligns directly with his medical needs. The website frequently publishes time-sensitive updates, including product launches and enrollment tools, which are not replicated elsewhere. These factors create a recurring and unavoidable need for Stephenson to revisit the site once it becomes accessible.

39.     On subsequent occasions, Plaintiff returned to the site, including on August 5, 2025, actively seeking to complete this task, but was blocked by the same and other persistent accessibility barriers. Plaintiff remains interested in using the website and intends to return once it is made accessible.

40.     Plaintiff's counsel conducted a WAVE accessibility audit of Defendant's website on August 18, 2025. The audit revealed multiple WCAG violations, including:

☐ Missing alternative text on numerous product images, rendering them invisible to screen reader users;

☐ Non-descriptive link text (e.g., "click here"), which failed to convey purpose or destination;

☐ Unlabeled form fields in both the checkout and login processes, obstructing independent completion of transactions;

☐ Keyboard traps and inaccessible modal dialogs that prevent navigation without a mouse;

☐ Improper heading structure, impeding logical navigation and orientation for assistive technology users.

41.     These barriers were not isolated glitches or temporary oversights. They reflect systemic design failures that denied Plaintiff the ability to access basic health-related resources with independence, autonomy, and dignity. The absence of semantic structure, ARIA roles, and keyboard operability violates the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA and constitutes unlawful discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182. AbbVie's failure to remediate these issues perpetuates digital exclusion and deprives blind users of equal access to its public-facing website.

42.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.     Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.     Failing to construct and maintain a Website that is sufficiently intuitive to be equally accessible to visually impaired individuals, including Plaintiff; and

c.     Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

43.     Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

14

44.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

45.     Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Websites. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

      a.     Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

      b.     Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

      c.     Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies with the WCAG 2.1 guidelines; and;

      d.     Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

46.     Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them

15

fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

47.     Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online platforms. These amounts are far greater than the associated cost of making Defendant's Websites equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Websites.

## **CLASS ACTION ALLEGATIONS**

48.     Plaintiff, JARON STEPHENSON, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

49.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

50.     Common questions of law and fact exist amongst the Class, including:

a.      Whether Defendant's Website is a "public accommodation" under the ADA;

b.      Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

16

c.      Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d.      Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

51.     Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

52.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

53.     Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

54.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

55.     Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

56.     Plaintiff JARON STEPHENSON, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

58.     Defendant's Website, www.abbvie.com, that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

59.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

60.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

61.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

62.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION

### (Violations of Section 504 of the Rehabilitation Act of 1973)

63.     Plaintiff JARON STEPHENSON, on behalf of himself and the other Class

Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth

herein.

64.     Because of his aforementioned disabilities, Plaintiff is a qualified individual as

that term is defined under Section 504 of the Rehabilitation Act of 1973.

65.     Because Defendant receives considerable funding under Medicare, Medicaid and

other government programs, Section 504 of the Rehabilitation Act of 1973 applies to the

Defendant.

66.     For the reasons stated with regard to Title III of the ADA, Defendant's website

is also discriminatory under Section 504 of the Rehabilitation Act of 1973.

67.     Because  Defendant is a healthcare provider and should be aware of its

Deficiencies, it has acted with deliberate indifference towards the Plaintiff and members of his

class and Plaintiff is entitled to compensatory damages as well as injunctive relief.


## THIRD CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

68.     Plaintiff, JARON STEPHENSON, on behalf of himself and the New York City

Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully

set forth herein.

69.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful

discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

70.    Defendant is subject to NYCHRL because it owns and operates the Website www.abbvie.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

71.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.abbvie.com causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

72.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

73.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

21

a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

74.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

75.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

76.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

77.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

78.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

79.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

80.     Plaintiff, JARON STEPHENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

82.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

83.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.abbvie.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

84.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

85.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person

23

any of the accommodations, advantages, facilities or privileges thereof."

86.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

87.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

88.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

89.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

90.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

91.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

92.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## FIFTH CAUSE OF ACTION
### (Violation of New York State Civil Rights)
### ("NYCRL")

93.    Plaintiff, JARON STEPHENSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

25

95.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

96.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

97.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

98.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

99.     Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

100.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

101.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

102.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## SIXTH CAUSE OF ACTION
### (Declaratory Relief)

103.    Plaintiff, JARON STEPHENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

104.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

105.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      September 22, 2025

                    Respectfully submitted,

                    **JOSEPH & NORINSBERG, LLC**

                    *Robert L. Schonfeld*

                    _____
                    Robert L. Schonfeld, Esq.
                    *Attorneys for Plaintiff*
                    825 Third Avenue, Suite 2100
                    New York, New York 10022
                    Tel. No.: (212) 227-5700
                    Fax No.: (212) 656-1889
                    rschonfeld@employeejustice.com